Timothy Gens (WIED BAR No. IL3126110)
thg@tlawgroup.com
**The Technology Law Group**
774 Mays Blvd. Suite 10-506
Incline Village, NV 89451
Telephone: (650) 380-2060

UNITED STATES COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TIMOTHY GENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>Vs.<br><br>ZOOM VIDEO COMMUNICATIONS, INC., a Delaware corporation<br><br>Defendant. | CASE NO. 2:20-CV-593<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Timothy Gens (hereinafter "Plaintiff") in the above-entitled action brings this class action complaint against Defendant Zoom Video Communications, Inc. (hereinafter "Zoom" or "Defendant"), on behalf of himself, and all others similarly situated, and alleges, upon personal knowledge as to his own actions and investigations, and upon information and belief as to other matters, as follows:

## INTRODUCTION

1. Zoom provides an online video conferencing platform which includes conferencing services and meetings for remote locations throughout the United States as well as other countries. Zoom advertises the secure nature of the platform to guard the medical, personally identifiable and confidential information of its users. Zoom also advertises that the platform is "HIPAA compliant" with medical privacy laws generally, and more specifically, the Health

CLASS ACTION COMPLAINT

Insurance Portability and Accountability Act of 1996 (HIPAA). Zoom, however, has made conscious decisions and choices in building its platform with lax security precautions that allows third parties to obtain unauthorized access to the medical, confidential, and personally identifiable information (collectively hereinafter "Data") of its users. Zoom is also a certified active member of the US Department of Commerce US-EU Privacy Shield, which governs the transfer of Data between the United States (US) and the European Union (EU) as well as the US and Switzerland, and which also strictly prohibits the actions that Zoom is accused of herein. Even more egregiously, Zoom itself collects the Data of its users and discloses that Data for compensation to third parties like Facebook and LinkedIn, without the consent, adequate notice or authorization of its users required by numerous privacy laws.

2. By this action, Plaintiff, on behalf of himself and the members of the Class defined herein, seeks damages and equitable relief to remedy Zoom's common law unjust enrichment and violations of Wisconsin's medical privacy statutes, invasion of privacy statutes, unfair and deceptive practices statutes, as well as the US Department of Commerce Privacy Shield.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. 1332(d)(2)(A) since this a class action in which the matter or controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and a significant portion of members of the proposed Class are citizens of a state that is different than the citizenships of Plaintiff and Defendant.

4. Defendant is subject to personal jurisdiction in the Eastern District of Wisconsin (hereinafter the "District"), consistent with the principals of due process, because Defendant offers its products for sale in this District, have transacted business in this District, have committed and/or induces violations of medical privacy statutes, etc. in this District, and/or placed products into the stream of commerce through established distribution channels with the expectation that such products will be purchased by residents of this District.

5. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b), 1391(c), and 1391(d).

## PARTIES

6. Plaintiff is an individual citizen and resident of Walworth County, Wisconsin and a member of the Eastern District of Wisconsin Bar.

7. Zoom is a Delaware corporation headquartered in San Jose, California.

## FACTUAL ALLEGATIONS

8. Zoom provides video communication products and services to individuals and companies throughout Wisconsin, the US, and internationally. Zoom users can host or participate in a Zoom videoconference by several means such as the Zoom application for Apple devices, Android devices, Windows and Apple desktops, or with a web browser.

9. Plaintiff regularly communicated with other Class members using the Zoom platform on mobile devices and desktops to transfer Data. Often, these other Class members were citizens of other states in the US and of member states of the EU and located in the EU.

10. On March 26, 2020, *Motherboard* for the Vice Media Group posted a report that the Apple version of the Zoom mobile application was sending personally identifiable information of its users to Facebook without the knowledge or consent of the users. The report states: "The Zoom app notifies Facebook when the user opens the app, details on the user's device such as the model, the time zone and the city the user is connecting from, which phone carrier they are using, and a unique advertising identifier created by the user's device which companies can use to target as user with advertisements." Users' Data was disclosed to Facebook whether the user was registered with an account at Facebook or not. The findings stated in the *Motherboard* report were confirmed by other researchers and publications.

11. On April 10, 2020, *Quartz* posted a report that Zoom also was sending personally identifiable information of its users to LinkedIn without the knowledge or consent of the users.

12. The users' Data Zoom disclosed to third parties has great economic value. The unauthorized disclosures of users' Data also place the users at greater risk for fraud and other identity-based harms.

13. The focus of Zoom's advertising is its commitment to maintaining its users' privacy. Zoom's privacy policy found on its website states: "We want you to know what data we collect and how we use it to provide our service." Zoom's statements about the security of its products and users' Data are false. Zoom made decisions and choices in designing and building its products to use inferior security measures resulting in unauthorized disclosure of users' Data to third parties. Zoom's statements about the use of users' Data are also false. Zoom itself collects the Data of its users and discloses that Data without authorization for compensation to third parties like Facebook and LinkedIn, without the consent, adequate notice or authorization of its users required by numerous privacy laws. The amount of compensation Zoom received from the unauthorized sale of users' Data to third parties is unknown to Plaintiff.

14. Zoom also advertises and promises users that it offers "end-to-end encryption for all meetings, role-based user security, password protection, waiting rooms, and place attendee on hold," as measures to allow users to "meet securely." As reported by *The Verge* on April 1, 2020, Zoom admits that it does not use end-to-end encryption: "Perhaps the most damning issue came to light yesterday. While Zoom still states on its website that you can "secure a meeting with end-to-end encryption," the company was forced to admit it's actually misleading people. "It is not possible to enable E2E encryption for Zoom video meetings," said a Zoom spokesperson in a statement to The Intercept, after the publication revealed Zoom is actually using transport encryption rather than end-to-end encryption."

15. Since at least 2018, Zoom advertised on its website and elsewhere that its products were "HIPAA compliant." The Health Insurance Portability and Accountability Act of 1996 (HIPAA) was amended in 2000 by rules to protect the privacy of personal health information known as the Privacy Rule which requires that covered entities implement administrative, physical, and technical safeguards the confidentiality and integrity of all Protected Health Information (PHI). PHI is broadly defined as information, including demographic information (which Zoom allowed unauthorized disclosures to third parties and sold to Facebook and LinkedIn at least), that is created or received by a covered entity and relates to the physical and/or mental health or condition of the patient, the patient's health care or payment for that health care. In 2003, another

- 4 -

CLASS ACTION COMPLAINT
Case 2:20-cv-00593-LA    Filed 04/12/20    Page 4 of 15    Document 1

amendment to HIPAA added The Security Rule which establishes minimum security requirements for PHI that a covered entity receives, creates, maintains or transmits in electronic form. Zoom is not "HIPAA compliant." The actions of Zoom in disclosing PHI to third parties without authorization violates HIPAA. The Zoom products fail to use sufficient security to meet the minimum standards set forth for PHI by the HIPAA Privacy Rule and Security Rule.

16. In 2012, the Federal Trade Commission issued a report entitled "Protecting Consumer Privacy in an Era of Rapid Change: Recommendations for Businesses and Policymakers." Two of the three areas of emphasis were "Privacy by Design" and "Privacy by Default." Privacy by Design requires that companies promote consumer privacy throughout their organizations and at every stage in the development of their products and services. Zoom made conscious decisions and choices to do the opposite and provide Plaintiff and the Class with products that are not secure. Privacy by Default requires that companies design their products to require a password as the default position for using the products. Zoom, again, does the opposite and chose the default position of "No Password Required" in order to use their products. The FTC enforces its rules under section 5 of the FTC Act 15 U.S.C. §45(a)(1). Each state has a law similar to section 5 of the FTC Act commonly known as Unfair and Deceptive Acts and Practices statutes.

17. Zoom is an active certified member of the US Department of Commerce Privacy Shield. The EU-U.S. and Swiss-U.S. Privacy Shield Frameworks were designed by the U.S. Department of Commerce, and the European Commission and Swiss Administration, respectively, to provide companies on both sides of the Atlantic with a mechanism to comply with data protection requirements when transferring personal data from the European Union and Switzerland to the United States in support of transatlantic commerce. To become certified, a company's privacy policy is reviewed for approval by the Department Commence to ensure that the policy meets stringent privacy standards. Zoom had to commit to following stringent privacy safeguards recited in its privacy policy. Zoom broke this commitment by providing products with less than stringent and inadequate privacy safeguards. To their detriment, Plaintiff and the Class relied on this Privacy Shield certification in choosing Zoom products in place of other videoconferencing products available on the market. Enforcement of the Privacy Shield commitment is detailed in

- 5 -
CLASS ACTION COMPLAINT
Case 2:20-cv-00593-LA   Filed 04/12/20   Page 5 of 15   Document 1

the *EU-US Privacy Shield Framework Principles Issued by the US Department of Commerce* in section II(7)(a)(i) et al.: "…and damages awarded where the applicable law or private-sector initiatives so provide…."

## CLASS ALLEGATIONS

18. Plaintiff brings this action on behalf of himself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking injunctive relief and damages pursuant to federal law and Wisconsin health care information, unfair competition, consumer protection, and privacy laws on behalf of the members of the following class: "All natural persons and businesses whose medical, confidential, and/or personally identifiable information was transmitted by a Zoom product and collected and/or disclosed by Zoom to a third party without authorization."

19. Specifically excluded from the Class are the Defendant; the officers, directors or employees of the Defendant; any entity in which the Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of the Defendant. Also excluded from the Class are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned in this action. Business entities are excluded from the the Class for purposes of Plaintiff's claim for relief under the Wisconsin Consumer Protection statutes.

20. Members of the Class are readily identifiable from Defendant's records.

21. Members of the Class are so numerous that individual joinder of all the members is not practical. Although the precise number and identification of Class members is unknown to Plaintiff currently, the members can be ascertained through appropriate discovery of Defendant. The Class is believed to include millions of individuals and businesses.

22. This action is brought and be maintained as a class action under the Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(10-(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements therein. Common questions of law and fact exist as to all members of the Class. These questions predominate over questions

that may affect only individual Class members because Zoom acted on grounds generally applicable to the Class. Such common and legal factual questions include:

    A. Whether Zoom failed to provide products that were HIPAA compliant as advertised and warrantied by allowing personal medical information to be disclosed without authorization to third parties and sold without authorization to third parties;

    B. Whether Zoom engaged in unfair or deceptive trade practices by allowing medical, confidential, and personally identifiable information to be disclosed without authorization to third parties and sold without authorization to third parties;

    C. Whether Zoom violated the Privacy Shield under which it is certified by the US Department of Commerce and breached an implied contract with Plaintiff and the Class members;

    D. Whether Zoom violated privacy statures by allowing medical, confidential, and personally identifiable information to be disclosed without authorization to third parties and sold without authorization to third parties;

    E. Whether Zoom was unjustly enriched by its unlawful conduct;

    F. Whether Plaintiff and the Class member are entitled to, among other things, injunctive relief, and if so, the nature and extent of such injunctive relief; and

    G. The appropriate class-wide measure of damages.

23. Plaintiff's claims are typical of the members of the Class as all are similarly affected by Zoom's actionable conduct. Zoom's conduct that gives rise to the causes of action of Plaintiff and Class members is the same for all Class members.

24. Plaintiff will fairly and adequately protect the interests of the Classes because he has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Plaintiff intends to prosecute this action vigorously for the benefits of the Class. The interests of Class members will be fairly and adequately protected by Plaintiff. Plaintiff is competent and experienced in the prosecution of complex class action litigation. Plaintiff is a Certified Information Privacy Practitioner under the International Association of Privacy Professionals

(IAPP) at iapp.org. The IAPP is the global authority for testing and certifying professionals using the Organization for Standardization (ISO) 27001:2013 and ISO 9001:2015 standards and the National Institute of Standards and Technology (NIST 2015) cybersecurity framework. Plaintiff is also a patent attorney registered to practice before the US Patent and Trademark Office. As such, Plaintiff is a technical expert in the telecommunications technologies used by Zoom.

25. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since the litigation of separate individual claims of all Class members is impracticable. Even if each Class member could afford the costs of litigation, the court system resources would be wasted in duplication and unduly burdened. Individual litigation across a multitude of jurisdictions presents the potential for inconsistent judgements and an unfair allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to the claims of all members of the Class relating to Zoom's unlawful conduct. By contrast, the class action device presents far fewer disadvantages and management obstacles and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

26. The various causes of action alleged in this Complaint are additionally or alternatively certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

    A. The prosecution of separate actions by numerous individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class member, thus establishing incompatible standards of conduct for Defendant;

    B. The prosecutions of separate actions by individual Class members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interest of other Class members who are not a party to such adjudications and would substantially impair or made the ability of such non-party Class members to protect their interests; and

- 8 -
CLASS ACTION COMPLAINT
Case 2:20-cv-00593-LA   Filed 04/12/20   Page 8 of 15   Document 1

C. Defendant has acted on grounds generally applicable to the entirely of the Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**Violation of the Wisconsin Medical Privacy Statutes**

27. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

28. At least since 2018, Zoom has warrantied its products as "HIPAA compliant." In fact, Zoom products are not HIPAA compliant. The Class, healthcare providers, healthcare facilities, etc. detrimentally relied on Zoom's warranty to transmit PHI using Zoom's products in a way which was not confidential nor private and which allowed unauthorized disclosure to third parties.

29. HIPAA does not allow a private right of action. The HIPAA Privacy Rule preempts all conflicting state law, except for state laws that are more "stringent" because they provide greater privacy protections or greater rights for individuals. It is generally accepted that there are very few, if any, instances where Wisconsin law both conflicts with the Privacy Rule and is less stringent than the Privacy Rule. Wisconsin law treats the Privacy Rule as the baseline for privacy obligations and the Zoom products failed to meet even these baseline obligations. Wisconsin law includes the patient confidentiality statute Wis. Stat. §146.92, the mental health treatment statute Wis Stat. §51.30 (See also Wis. Admin. Code chapter HFS 92 for accompanying regulations) and the HIV test statute Wis. Stat. §252.15.

30. The Privacy Rule and the Security Rule applies to "covered entities" of which Zoom is one as it provides products that transmits electronic PHI between Plaintiff and Class members who are patients as well as between healthcare providers. The Wisconsin patient confidentiality statute does not limit its application to any particular class of persons or entities and applies to anyone who possesses and/or electronically transmits patient health care records as Zoom's products do. The Wisconsin statutory provisions allowing for enforcement refer to "custodians" of records and to "any person" who violates the statute. Zoom is a covered entity under HIPAA and a custodian under Wisconsin law.

- 9 -
CLASS ACTION COMPLAINT
Case 2:20-cv-00593-LA   Filed 04/12/20   Page 9 of 15   Document 1

31. As with the Wisconsin patient confidentiality statute above, the Wisconsin mental health statute protects the confidentiality of a patient's mental health records and the Wisconsin HIV test statute protects the confidentiality of a patient's HIV test records when those specific type of health records are electronically transmitted by Zoom products.

32. PHI is broadly defined as information, including demographic information (which Zoom allowed unauthorized disclosures to third parties and sold to Facebook and LinkedIn at least), that is created or received by a covered entity and relates to the physical and/or mental health or condition of the patient, the patient's health care or payment for that health care.

33. Plaintiff and Class members were misled and harmed by Zoom's claim that its products were "HIPAA compliant" when Zoom consciously made choices to use non-compliant security in its products allowing unauthorized disclosure of PHI to third parties and also sell PHI to third parties like Facebook and LinkedIn.

## SECOND CAUSE OF ACTION

### Violation of the Wisconsin Deceptive Trade Practices Act

34. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

35. Zoom has violated the Deceptive Trade Practices Act Wis. Stat. 100.18 with many untrue, deceptive or misleading statements in the course of selling its products to the public. The Deceptive Trade Practices Act broadly bars "untrue, deceptive or misleading" statements made in the course of selling goods or services, whether in the form of advertisements or other types of representations, either written or oral.

36. Under the statute, Plaintiff and members of the Class are "consumers." Zoom made public statements to Plaintiff and members of the Class that were untrue, deceptive, or misleading representations made to induce a financial transaction and that the representations resulted in a financial loss.

37. Among others, an untrue statement Zoom made was that its products were "HIPPA compliant." This is important because it establishes a high security and privacy standard that Plaintiff and members of the Class relied on and that Zoom failed to provide.

38. Among others, an untrue statement Zoom made was that its products used "end-to-end

- 10 -

CLASS ACTION COMPLAINT
Case 2:20-cv-00593-LA   Filed 04/12/20   Page 10 of 15   Document 1

encryption." This is important because it establishes a high security and privacy standard that Plaintiff and members of the Class relied on and that Zoom failed to provide.

39. Among others, a misleading representation that the Zoom app has characteristics, benefits, or uses that it does not have to prevent unauthorized access to users' Data,

40. Among others, an untrue statement Zoom made is that it does not sell users' Data to third parties when in fact it does so to at least Facebook and LinkedIn.

41. As a result of these untrue, deceptive, or misleading representations, Plaintiff and members of the Class suffered a financial loss after paying for the Zoom products that they cannot use because of inadequate security. Even for those members that did not directly pay Zoom to use its products there was a financial loss. Zoom was selling the economically valuable Data of its users to third parties unauthorized by and unbeknownst to the users. There is also a greater risk of financial loss to Plaintiff and the members of the Class, as the personal Data disclosed to third parties by Zoom's lax security can be used for identity theft among other fraudulent scams.

## THIRD CAUSE OF ACTION

### Violation of Wis. Stat. §100.20 prohibiting Unfair Trade Practices

42. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

43. Wis. Stat. §100.20 also protects consumers and reaches beyond misleading advertising to prohibit "unfair trade practices." This statute is the state counterpart of section 5 of the Federal Trade Commission Act 15 U.S.C. §45(a)(1). In Wis. Stat. chapter 100, there are such matters such as telecommunication services which are specific targets of consumer protection under Wis. Stat. §100.207.

44. Zoom is a "telecommunication services" provider under the above statutes. Zoom made "false, misleading or deceptive" advertising and sales representations to Plaintiff and the members of the Class which violate these statutes.

45. Zoom also violates these statutes by purposefully failing to provide both Privacy by Design and Privacy by Default as detailed by the FTC. Privacy by Design requires that companies promote consumer privacy throughout their organizations and at every stage in the

development of their products and services.  Zoom made conscious decisions and choices to do the opposite to provide Plaintiff and the Class with products that are not secure.  Privacy by Default requires that companies design their products to require a password as the default position for using the products.  Zoom, again, does the opposite and chose the default position of "No Password Required" in order to use their products.

46. Zoom consciously designed its products that failed to meet the standards required by these statutes.  Zoom also made public statements to Plaintiff and the members of the Class that were untrue, deceptive, or misleading representations made to induce a financial transaction and that the representations resulted in a financial loss.

## FOURTH CAUSE OF ACTION

### Violation of the Privacy Shield and Breach of Implied Contracts

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. Zoom is a certified member of the US Department of Commerce Privacy Shield.  To become certified, Zoom's privacy policy was reviewed for approval by the Department Commence to ensure that the Zoom privacy policy meets the stringent privacy standards of the Privacy Shield.  Zoom had to commit to following the stringent privacy safeguards recited in its privacy policy certified by the US Department of Commerce.  Zoom broke this commitment in several ways.  First, Zoom provided products with inadequate privacy safeguards to prevent the unauthorized disclosure of users' Data to third parties.  Second, Zoom had to state how it used the users' Data it collected in its certified privacy policy.  Not only did Zoom fail to inform the users that it was selling the users' Data to third parties like Facebook and LinkedIn, Zoom's certified privacy policy clearly states that Zoom "does not sell" users' Data.

49. To their detriment, Plaintiff and the Class relied on this Privacy Shield certification in choosing Zoom products in place of other videoconferencing products available on the market because they expected Zoom to honor its commitment to the Privacy Shield and actually provide products with adequate security and not sell users' Data to third parties.  Enforcement of the Privacy Shield commitment is detailed in the *EU-US Privacy Shield Framework Principles Issued by the US Department of Commerce* in section II(7)(a)(i) et al.: "…and damages awarded

where the applicable law or private-sector initiatives so provide

50. In the alternative, an implied contract is formed between Zoom and Plaintiff and the Class members. Zoom offered its videoconferencing services to Plaintiff and the Class members according to the terms recited in the certified Zoom privacy policy. Zoom received consideration in the form of monetary payments and access to the users' valuable Data. An implied contract is formed that in exchange for the consideration to and accepted by Zoom, the Plaintiff and Class members would receive products that performed according to the terms recited in the certified privacy policy and that any user Data collected by Zoom would be used in the manner recited in the certified privacy policy.

51. In breach of the terms of the certified privacy policy, Zoom products allowed unauthorized disclosure of users' Data to third parties and collected users' Data for an unauthorized sale to third parties.

52. As a direct and proximate result of Zoom's breach of its implied contracts with Plaintiff and Class members and they have incurred financial loss and suffered significant injuries.

### FIFTH CAUSE OF ACTION

**Violation of Wisconsin Privacy Statutes**

53. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54. Wisconsin has codified the traditional common law torts in the privacy statute Wis. Stat. §995.50 with an invasion of privacy stated in Wis. Stat. §942.08. The definitions are similar, although not identical, to traditional common law torts as expressed in, e.g., *Restatement (Second) of Torts* § 652.

55. Plaintiff and Class members reasonably expected that the Zoom products would be secure from disclosure to unauthorized third parties and that their Data would not be disclosed to any unauthorized parties or used for any improper purpose.

56. Zoom invaded the privacy of Plaintiff and Class members by failing to adequately secure their Data from unauthorized disclosure to third parties and secretly selling their Data without authorization to third parties in a manner that is highly offensive to a reasonable person. These unauthorized disclosures were without the knowledge or informed consent of Plaintiff and the

- 13 -

Class members.

57. Zoom acted in reckless disregard of the privacy rights of Plaintiff and Class members by purposefully using inadequate and substandard security standards to protect their Data. Zoom knew or should have known that the inadequate and substandard security standards used its products are highly invasive and offensive to a reasonable person in the same position as Plaintiff and the Class members.

58. Among other sections, Zoom has violated subsections (2)(am)(2 and 3) by the unauthorized selling of Data of the Plaintiff and the Class members to third parties like Facebook and LinkedIn.

59. As a direct and proximate result of Zoom's unlawful invasions of privacy, the Data of Plaintiff and the Class members has been disclosed to third parties without authorization and their reasonable expectations of privacy have been recklessly violated.

### SIXTH CAUSE OF ACTION

#### Unjust Enrichment

60. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

61. Zoom charges users a range of fees for its products and various levels of services.

62. As a direct and proximate result of the unlawful conduct detailed throughout this Complaint, Zoom has been and will continue to be unjustly enriched by the collection of Plaintiff's and the Class members' Data and its unauthorized sale to third parties like Facebook and LinkedIn.

63. It would be inequitable for Zoom to be allowed to retain any of the unjust enrichment delivered by its products and services through its unjust and equitable conduct. Plaintiff and the Class are entitled to the amount of Zoom's unjust enrichment.

64. Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, pray that:

1. The Court determines that this action may be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for

- 14 -

injunctive relief , and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and declaring Plaintiff as the representative and attorney of the Class;

2. The Court declare the conduct alleged to be unlawful in violation Wisconsin's medical privacy statutes, deceptive trade practices act, unfair trade practices act, and invasion privacy, as well as the US Department of Commerce Privacy Shield implied contracts and the common law of unjust enrichment;

3. Plaintiff and each Class member recover statutory damages such are provided by the law;

4. Plaintiff and each Class member recover punitive and treble damages to the extent such are provided by the law;

5. Plaintiff and each Class member recover the amounts by which Zoom has been unjustly enriched through its conduct;

6. Zoom be enjoined from continuing the illegal conduct alleged herein;

7. Plaintiff and the Class members recover their costs of suit, including reasonable attorneys' fees and expenses as provided by law;

8. Pre- and post-judgement interest to the extent allowable; and

9. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury as to all issues so triable.

Dated April 10, 2020  Respectfully submitted,

s/ Timothy Gens
Timothy Gens  (WIED BAR No. IL3126110)
thg@tlawgroup.com
**The Technology Law Group**
774 Mays Blvd. Suite 10-506
Incline Village, NV 89451
Telephone: (650) 380-2060
**Signed individually and as attorney
for the proposed Class**

- 15 -
CLASS ACTION COMPLAINT
Case 2:20-cv-00593-LA   Filed 04/12/20   Page 15 of 15   Document 1